Your Honor, Judge Gould, good morning. Gary Burcham on behalf of Petitioner Oscar Barretto. Mr. Barretto currently is serving a three-strike sentence of 25 years to life. Excuse me. Will you speak directly into the microphone? Pastor is not better if he can't understand you. Mr. Barretto currently is serving a three-strikes, 25 years to life sentence in California State Prison due to indefensible and inexplicable omission by his trial attorney. Despite overwhelming evidence that Mr. Barretto had committed the felon in possession offense with which he was charged and despite the fact that if he was convicted of that offense, he was going to spend 25 years to life in prison, his court-appointed defense counsel did not initiate plea negotiations until after the jury was selected and prior to opening statement in the case. When we factor into the mix the record demonstrating that the government would have been very likely would have offered a non-three-strikes free agreement to Mr. Barretto had plea negotiations been initiated in a timely fashion as well as the fact that there's nothing in the record to indicate the trial court would not have gone along with such a plea deal. Why do you say that? I mean, it's pretty obvious that there's all kinds of evidence that the trial court wouldn't have gone along. I mean, he considered the issue at the time of sentencing and he kind of specifically went through the Williams factors and said he didn't qualify. Well, I think we need to distinguish between a Romero motion, which was what was at issue at sentencing, and a plea deal. A Romero motion, obviously, the defendant bears the burden of demonstrating to the trial judge that his case is essentially outside the heartland of three-strikes cases. I think it's akin to what we do with downward departures here in federal district court, which is showing the court that this defendant is outside the normal three-strikes case, outside the heartland of what's normally a three-strikes defendant and a three-strikes case. When we're talking about plea negotiations, that's a whole different animal. That's the D.A. and the defense counsel going into chambers, sitting down with the judge, and both sides explaining to the judge why a plea agreement is proper. The D.A. explaining why, for the people of the state of California, a plea agreement is a reasonable and just sentence. He brought some of this to the trial judge before, and he said he didn't know enough to be able, that he would not make any kind of commitment whatsoever until he saw the petitioner's background. And then he gets that material, and he says, after examining the materials, I won't give it. That's why this is so prejudicial, Your Honor, because the judge at the time when it was brought up, right before opening statements, when the jury was literally outside the door waiting to come in and start the trial, the judge, not surprisingly, said, I can't do this right now. I don't have enough information about Mr. Barreto. I don't know anything about him. We can't do this right now. I have the jury waiting outside. We're going to start the trial. And that's why the waiting, the failure to initiate this until the day of trial was so prejudicial. What would have changed about his background that would have convinced the judge, if there had been earlier plea negotiations? Well, there were a whole bunch of mitigating factors that came out of sentencing, the family connection that Mr. Barreto had. He ultimately examined that and nonetheless didn't grant the subsequent motion. Correct. But, again, that was in the context of this Romero motion, where the defendant bears the burden of demonstrating that his case is different than an average three-strike case, whereas with plea negotiations, which occur in courtrooms every single day across the nation, it's a different procedure. It's a different situation where the VA and the defense counsel or federal court, the AUSA and defense counsel get together and hammer out a deal, and in state court it's a different procedure. I think you're wrong on that. I don't think that happens in federal court. Well, obviously in federal court the plea agreements are non-binding unless it's a single one. And the judge was pretty tough in his sentencing in coming down very hard on your client. I mean, what leads you to believe? He clearly indicated that he thought it would be an abuse of discretion to strike one of Mr. Barreto's strikes. What leads you to believe that it would have been any different had the plea negotiations occurred earlier? Well, a couple things. One of the problems that the trial judge had with Mr. Barreto at the time of sentencing was that he had not accepted responsibility for possessing the firearm. That was really one of his main problems, in that he's trying to find a way to take Mr. Barreto out of the heartland of three strikes cases, and he keeps coming back to the point of, well, how can I do that when I'm clearly convinced that this gentleman possessed the gun, but he refuses to accept responsibility and accept responsibility for what he's done and demonstrate that to the court. And so obviously, if there's a plea deal reached before trial, part of that plea deal is Mr. Barreto coming into court, accepting responsibility for possessing the firearm. And again, I think that there's a huge difference between a Romero motion, where the defendant has the burden of establishing that he is different from the average three-striker and that these mitigating factors are in place, and a plea deal where a gentleman accepts responsibility for the offense, a factual basis is laid, and both sides go into chambers and explain to the judge why it's a proper disposition. And I think in this case, if this would have happened several weeks prior to trial, obviously we don't know for sure at this point because it never happened, but given the judge's comments about being sad to have to impose the sentence upon Mr. Barreto, as well as his concern about the failure to accept responsibility. Counsel? Yes, sir. Counsel, Judge Gould, I think I understand your argument, but I have kind of a theory question on which I'd like your point of view. That is, do we have any published federal court decision that's ever held squarely that for a lawyer not to initiate plea discussions sua sponte, you know, absent a request from the client, is ineffective assistance of counsel? And if you're aware of such a case, please tell us what it is, and you can give a citation to the clerk if it's not in your brief.  I cited the Hawkman case from the Eighth Circuit where the court held that it was ineffective for counsel not to have initiated plea negotiations in that case. I cited the Dillon case from the Seventh Circuit where the Seventh Circuit said that his failure to initiate plea negotiations was inexplicable and showed unfamiliarity with the case and a lack of preparation. Basically what the rule is in every circuit, and I think it's the proper rule, is not that counsel always has a duty to initiate plea negotiations. It's done on a case-by-case basis. If the facts of a certain case, such as Mr. Beretto's case, show that any reasonably competent defense counsel would reach out to the DA and try to resolve the case prior to trial, then that becomes a Sixth Amendment obligation in that case. Right, but how can the lawyer reach out to the client to try to resolve the deal if the client hasn't said that they want to plead guilty, and they've got a right to a defense? No, you're absolutely right, Your Honor. If the defendant tells his attorney, I want to go to trial, and the defendant is held in on going to trial on a case, then he can't come back later and complain about the fact that his attorney didn't get him a plea deal. But in this case, Mr. Beretto said in his habeas papers that he wanted to take a deal, and the fact that it was brought up at all on the day of trial shows that Mr. Beretto was amenable to accepting a plea offer. So I agree that if a defendant isn't interested in a plea deal, he can't complain later on that his attorney didn't initiate plea negotiations. But the record in this case is different and demonstrates that Mr. Beretto wanted to avoid the three-strike sentence, and unfortunately his lawyer waited until the day of trial to try to make that happen. Counsel, you have about a minute left. Would you like to save it for rebuttal? Thank you, yes. All right. Good morning, Your Honors. May it please the Court. Deputy Attorney General Mary Sanchez on behalf of Respondent. There are a couple of points I wanted to just highlight for the Court. This morning when I was reading through the supplemental excerpts of records   of Mr. Beretto, there was a notice of motion, the Romero motion, that was filed by Mr. Hanawalt before the Mr. Tobin came on board. And in that, and it's at SER page 226, supplemental excerpts of record at page 226, where he's saying he will move the Court to dismiss the prior offenses for the purpose of imposition of judgment on the defendant's plea of guilty and admission of single prior strike on July 17, 2000. I think that's an indication that at that point in time, there was some interest on the part of the Petitioner in a guilty plea. Excuse me, counsel. Excuse me for interrupting. The time is short. That goes to one thing I was thinking about. It said at one point during the pre-trial discussion with Judge Brody, the prosecutor said, I have talked to counsel and we were talking this morning. That statement suggests to me that they had talked before. Is that what you're suggesting now? I am. And looking again at this motion, this Romero motion, at page 234 of the supplemental excerpts of record, and this is by Mr. Hanawalt, he says, I have presented this matter to Mr. Bradbury, who's the District Attorney of Ventura County. I have presented this matter to Mr. Bradbury for his assessment on April 17, 2000. On May 10, 2000, he declined to modify the pleading that are currently in existence. So what that indicates is that, indeed, there were plea negotiations that had gone on earlier in the case before Mr. Hanawalt was substituted out and trial counsel substituted in. Mr. Tobin, I believe, was his name. This would have been information that obviously defense counsel was aware of. This motion was in the trial record. And knowing that there have been plea negotiations that had been presented to Mr. Bradbury, the District Attorney, and he had declined to strike something could have been obviously a very important factor in trial counsel's decision not to formally renegotiate a plea agreement. Because Judge Brody later indicated that he, you know, would not approve it before it then was transferred to Judge Riley. And what I was wondering was how did it get before Judge Brody? I think it's at page 16 and 17 of the record. Judge Brody was the trial judge. That's my recollection. I'm sorry, Judge Riley, then? It's 16 and 17. Judge Riley, that was apparently before it was sent out for trial at a very early stage. That's what I can gather from the record. The question I'm asking is, was there at least some discussion initiated or at least dealt with by the defense attorney with Judge Riley? Are we talking about the first Romero motion? Is that? Right. And he denied it without prejudice. That's correct. There did not appear to be any plea discussions on that record. The Romero motion was on the record, and I don't see any indications on this record that there was plea discussions. But again, the Court would have been aware of this motion, reading the motion saying that there had been plea discussions with Mr. Bradbury in April, and in May, Mr. Bradbury had declined to modify the pleadings by striking any of the strikes. So, again, you can just assume that the judge was aware of this, and I think this is a very important factor that goes to both prongs of the Strickland test. Number one, it shows that trial counsel, being aware of this, would not have necessarily wanted to continue to renegotiate or reenter into a plea negotiation that had been personally turned down by Mr. Bradbury. So it would have been akin to a futile motion. So he didn't do that. Now, obviously there was some discussion on the very day of trial with counsel and with the DA, Deputy DA, Ms. Peace, who apparently she wasn't aware either that there was this discussion going on with Mr. Bradbury and Mr. Hannibal. She didn't have any, I mean, you read that colloquy between the two of them, she's saying, well, he's never presented in a sentence to the DA. I don't think she was aware of it either. So it looks like there was something going on between Mr. Hannibal and Mr. Bradbury, the district attorney, that the line deputies weren't aware of. And I think, again, though, this goes to show that counsel was not ineffective for failing to pursue plea negotiations in a more timely manner, and it also goes to show that there was no prejudice here because assuming he had gone and tried to renegotiate in a more timely manner, the outcome would have been the same. The district attorney would have declined to strike a strike. Help me. What's Bradbury's? Counsel, Judge Gould with a question for you, if I may, please. I have for you the same theory question that I asked your colleague, that is what's the state of federal court precedent on when a lawyer, to be effective, has to initiate plea discussions absent their client's request? Well, I agree with my opposing counsel. There's no bright-line rule in any of the federal cases that I've seen. It is pretty much a case-by-case basis. There was a case he cited, Hockman versus Parrott, where the holding with the counsel was ineffective when he failed to negotiate before advising defendant to plead guilty. But the court stressed, we do not hold that defense counsel always has a duty to initiate plea bargaining negotiations. So the cases are pretty much a case-by-case basis. And in this circuit, there is, of course, Aguilar versus Alexander, where this circuit held that it rejected a claim that counsel was ineffective for not pursuing plea negotiations more aggressively after her first attempt was rebuffed. And the court noted the differences in the strategy, tactics, and styles of the defense attorneys. I think that's important to hear in this context. There was obviously a difference in strategy and tactics in this particular courtroom where, you know, there's negotiations going on with the district attorney that apparently the line deputy wasn't even aware of. I believe Judge Wynn has a question for you. No. The question I really would ask was on the prejudice side of it. I mean, what's your take in terms of whether the judge would have been required under whether they could have circumvented the judge's ultimate decision or what the likelihood that the judge would have accepted striking of one of these? I think based on Petitioner's record, there was no possibility he was going to strike a strike. And I think what the judge noted in particular was although the strikes were fairly old, having occurred in the mid-'80s, he had not let Petitioner had not led a blameless life. And he had had several drug offenses, and he had a petty theft with a prior that had sent him back to the prison during intervening time between this last felony that he picked up and the three strikes that he picked up. So he had not led a blameless life. And I think this weighed heavily in the trial court's decision not to strike a strike. And it goes to show that there is no prejudice here based on the failure to timely enter into plea negotiations. Well, under California law, would there be some kind of 11C1C agreement or some kind of general would it have been discretionary with the trial judge as to whether to strike the third strike? Yes, of course. Is there any way, even if they had reached negotiations with the prosecutor, that that judge would have otherwise been much more inclined to get rid of the third strike? You know what, that's pure speculation. I think in this case, though, under the facts of this case and his prior records and his prospects, he was well within the bounds of the three strikes law. He was not outside the bounds of the three strikes law. And I think the trial court recognized that. At the same time, of course, he was aware that there was some strengths. He had some strengths with his family support. I believe he had a job. The judge looked at all of these factors very carefully. And I think ultimately he was swayed by the fact that he had not led a blameless life between the time he picked up the strikes and the time of the latest offense. And I don't think the judge would have used his discretion to strike, even assuming there had been prior negotiations. Thank you, counsel. Your time has expired. Thank you. Thank you, Your Honors. Attorney Tobin had the case for six weeks prior to trial. And whether there was some discussion with the prior DA and the prior defense counsel, it's inexcusable under these facts and this evidence and this potential penalty for this lawyer not to call the DA and try to settle this case. There is absolutely no excuse for it, and it's inexplicable in this case. With regard to whether the trial court would have accepted a joint plea offer, the government can't say that there was no possible way. That's nonsense. In California State Court, when a plea deal is reached between a defendant and the DA, you go in the chambers, you sit down with the judge, you talk about the plea deal, both sides tell the judge why they think it's a proper deal, and the judge either says yes or no. But it's a completely different scenario from a Romero motion, where the defendant bears the burden of establishing that he falls outside the bounds of the three-strike law. You have to show that there's a substantial likelihood that there would have been a different outcome. A reasonable probability that there would have been a different outcome. And I say, given the judge's sadness in having to impose a 25-to-life sentence, his hesitation in doing it, the first thing he said at the sentencing hearing was, I've struggled with this case for a month and a half. And I would submit to the court that there is a reasonable probability, if this case was presented in the form of a joint plea agreement between the defense and the DA. Counsel. Thank you very much. The case is submitted. I thank counsel for their arguments. We'll move next to the case of 20th Century Fox International v. Gemini Film International.
judges: Gwin, Nelson D. W., Gould